## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL DOCKET NO.: 5:06CV120

| | | |
|---|---|---|
| **JULIE G. SCHOLL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **SAGON RV SUPERCENTER, LLC and** | ) | |
| **GULF STREAM COACH, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

      **THIS MATTER** is before the Court on the following Motions and Memoranda: (1)

Defendant Gulf Stream Coach, Inc.'s ("Gulf Stream") Motion to Dismiss for Improper Venue, or

in the Alternative, Motion to Change Venue, and Memorandum in Support, filed September 20,

2006 [Doc. ## 2,3]; (2) Defendant Sagon RV Supercenter, LLC's ("Sagon") Motion to Dismiss

for Lack of Personal Jurisdiction and Memorandum in Support, filed September 20, 2006 [Doc.

## 4, 5]; (3) Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss and

Motion to Change Venue, filed October 4, 2006 [Doc. # 7]; (4) Plaintiff's Amended

Memorandum in Opposition to Defendants' Motions to Dismiss and Motion to Change Venue,

filed October 10, 2006 [Doc. # 11]; (5) Plaintiff's Motion to Remand and Memorandum in

Support, filed October 13, 2006 [Doc. ## 13, 14]; (6) Defendant Sagon's Reply Memorandum in

Support of Motion to Dismiss, filed October 24, 2006 [Doc. # 15]; (7) Defendant Gulf Stream's

Reply Memorandum in Support of Motion to Dismiss, or in the Alternative, Motion to Change

Venue, filed October 24, 2006 [Doc. # 18]; (8) Defendant Sagon's Memorandum in Opposition

to Plaintiff's Motion to Remand, filed October 30, 2006 [Doc. # 19]; (9) Defendant Gulf

Stream's Memorandum in Opposition to Plaintiff's Motion to Remand, filed October 30, 2006

[Doc. # 20]; (10) Plaintiff's Surreply Memorandum in Opposition to Defendants' Motions to

Dismiss and Motion to Change Venue, filed October 31, 2006 [Doc. # 21]; (11) Plaintiff's Reply

Memorandum in Support of Motion to Remand, filed November 6, 2006 [Doc. # 23]; (12)

Defendant Gulf Stream's Motion to Strike Plaintiff's Surreply and Memorandum in Support,

filed November 14, 2006 [Doc. ## 24, 25]; (13) Plaintiff's Memorandum in Opposition to

Defendant Gulf Stream's Motion to Strike Surreply, filed November 17, 2006 [Doc. # 26]; (14)

Defendant Sagon's Motion to Amend Notice of Removal and Memorandum in Support, filed

November 20, 2006 [Doc. ## 27, 28]; (15) Plaintiff's Memorandum in Opposition to Defendant

Sagon's Motion to Amend Notice of Removal, filed November 29, 2006 [Doc. # 32].  These

Motions are now ripe for disposition by the Court.

Having carefully considered the arguments, the record, and the applicable authority, for

the reasons stated below, the Court will grant Defendant Sagon's Motion to Amend Notice of

Removal; deny Plaintiff's Motion to Remand; deny Defendant Sagon's Motion to Dismiss for

Lack of Personal Jurisdiction; deny Defendant Gulf Stream's Motion to Dismiss for Improper

Venue; deny Defendant Gulf Stream's Motion to Strike; and grant Defendant Gulf Stream's

Motion to Transfer Venue.

## I.  FACTUAL AND PROCEDURAL HISTORY

This case arises out of a dispute between Plaintiff, Julie G. Scholl ("Plaintiff" or

"Scholl"), and Defendants Gulf Stream Coach, Inc. ("Gulf Stream"), and Sagon RV Supercenter

("Sagon") over claims resulting from an allegedly defective motor coach.  (Pl. Cmpl.).  On

August 7, 2006, Plaintiff filed suit against Defendants in the Superior Court of Iredell County, North Carolina, seeking damages for breach of contract; revocation of acceptance; damages for breach of express and implied warranties; damages for fraudulent conduct and negligence; damages and treble damages for unfair and deceptive trade practices; and costs and attorneys fees. (*Id*.). On September 13, 2006, Defendant Sagon, with the consent of Defendant Gulf Stream, timely removed the action to this Court based on diversity of the parties, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Def. Not. of Rmv.).

Plaintiff is a citizen and resident of Iredell County, North Carolina. (Pl. Cmpl. ¶ 1). Defendant Sagon is a Georgia limited liability company with its principal place of business in Jackson, Georgia. (*Id*. ¶ 2; Def. Sagon Mem. in Sup. Mt. to Dis. at 2). Defendant Gulf Stream is an Indiana corporation with its principal place of business in Nappannee, Indiana. (Pl. Cmpl. ¶ 3; Def. Gulf Stream Mem. in Sup. Mt. to Dis. at 1).

In August 2005, Plaintiff was in the process of moving from Florida to North Carolina with the intention of establishing North Carolina as her sole and permanent residence. (Pl. Am. Mem. in Opp. Defs. Mts. at 3). During trips between North Carolina and Florida, Plaintiff visited Sagon's dealership in Jackson, Georgia to look into purchasing a motor coach. (*Id*.; Def. Sagon Mem. in Sup. Mt. to Dis. at 1). Plaintiff contends that she first visited Sagon's dealership on August 8 and 9, 2005. (Pl. Am. Mem. in Opp. Defs. Mts. at 3). On August 15, 2005, Plaintiff contends that she again visited Sagon's dealership and was shown a 2006 Gulf Stream Friendship G7 Motor Coach ("the coach") by Sagon's sales representatives. (*Id*. at 4). During this visit, Plaintiff contends that she expressed interest in purchasing the coach, but left the dealership without completing the purchase. (*Id*.).

In mid to late August 2005, Plaintiff contends that Sagon's representative initiated multiple telephone calls to her in North Carolina. (Pl. Am. Mem. in Opp. Defs. Mts. at 4). Plaintiff and Sagon's representative purportedly negotiated the terms of the purchase of the coach during these telephone conversations. (*Id.*). Plaintiff contends that Sagon's representative telephoned her repeatedly and pressured her to purchase the coach by the end of August 2005. (*Id.*). On August 22, 2005, Plaintiff contends that Sagon's representative initiated a telephone call during which she and the representative negotiated the final purchase price of the coach. (*Id.*). During this telephone call, Plaintiff authorized Sagon to charge $5,000 to her credit card as deposit. (*Id.*).[1]

At the end of August 2005, Plaintiff contends that she received a package in the mail from Sagon at her temporary residence in North Carolina. (Pl. Am. Mem. in Opp. Defs. Mts. at 5). The package included the sales contract for the coach, instructions for Plaintiff to wire her down payment to Sagon in Georgia, and other relevant paperwork. (*Id.*). Plaintiff contends that on August 31, 2005 she signed the sales contract and other relevant documents, and had them notarized at First Charter Bank located in Troutman, North Carolina. (*Id.*). Plaintiff contends

---

[1] Plaintiff maintained in her first response to Defendants' motions to dismiss that the $5,000 deposit on August 22, 2005 was the first transfer of money from Plaintiff to Sagon in connection with the purchase of the coach. (Pl. Am. Mem. in Opp. Defs. Mts. at 4). Plaintiff later acknowledged in an affidavit attached to a surreply memorandum that, on August 9, 2005, during her initial visit to Sagon's dealership in Georgia, she paid a $5,000 "refundable good faith deposit" that Sagon's representatives informed her was necessary to "reserve" the coach she wanted. (Pl. Sur. Mem. in Opp. Defs. Mts., Pl. Aff. ¶ 6). Plaintiff contends that she did not know that this deposit was later applied to the purchase price of the coach. (*Id.*). She also contends that at the time the deposit was made she had not agreed to buy the coach, and that Sagon's representatives informed her that the deposit was merely a refundable "reservation fee." (*Id.*).

that her signing of the contract in North Carolina completed the purchase of the coach. (*Id.*).[2]

On September 10, 2005, Plaintiff traveled to Sagon's dealership in Georgia to retrieve the coach she had purchased. (Pl. Cmpl. ¶ 13). Plaintiff alleges that she first experienced mechanical problems with the coach on September 18, 2005. (*Id.* ¶ 14). On October 19, 2005, Plaintiff returned the coach to Sagon's dealership in Georgia for repairs. (*Id.* ¶ 15). On December 1, 2005, Plaintiff traveled to Georgia to retrieve the coach from Sagon after being informed by Sagon that the repairs were complete. (*Id.* ¶ 16). During Plaintiff's December 1, 2005 visit to Sagon's dealership, Plaintiff maintains that the coach malfunctioned again, and that Sagon informed her that the coach would need to be sent to Defendant Gulf Stream's factory in Indiana for repairs. (*Id.* ¶¶ 16, 17).

Plaintiff contends, upon information and belief, that on December 10, 2005, Sagon sent the coach to Gulf Stream's factory in Indiana. (Pl. Cmpl. ¶ 18). On January 30, 2006, Plaintiff contends that Gulf Stream returned the coach to Sagon's dealership in Georgia, and that on January 31, 2006, Sagon informed Plaintiff that the coach was repaired and ready for pick-up. (*Id.* ¶ 18).

Plaintiff retrieved the coach immediately after Sagon contacted Plaintiff, and on February 1, 2006, Plaintiff drove the coach to Florida. (Pl. Cmpl. ¶ 19). During the trip to Florida, Plaintiff contends that the coach continued to manifest mechanical problems similar to those which Defendants allegedly repaired, and that the coach also began to exhibit new mechanical

---

[2] Plaintiff disputes Defendants' contentions that the contract was completed by Sagon in Georgia after Sagon's receipt of Plaintiff's signed portion of the contract. (Pl. Sur. Mem. in Opp. Defs. Mts. at 2). In her surreply memorandum, Plaintiff reasserts that she was the last person to sign the contract. (*Id.*). To support her argument Plaintiff notes the type-printed date on the contract itself, which is August 30, 2005. (*Id.*).

problems. (*Id*.). On March 14, 2006, Gulf Stream directed Plaintiff to take the coach to Sun Coast RV, a repair shop in North Carolina. (*Id*. ¶ 20). Plaintiff contends that Sun Coast RV was not able to make the necessary repairs to the coach, and that as a result, Gulf Stream informed Plaintiff that the coach would need to be sent to Gulf Stream's factory in Indiana a second time. (*Id*. ¶ 22). Plaintiff contends that she was informed by Sun Coast RV that the coach's recurring mechanical problem would continue to malfunction due to the coach's faulty design. (*Id*. ¶ 23). Plaintiff did not have the coach sent to Gulf Stream's factory, and it remains at the premises of Sun Coast RV (*Id*.). Plaintiff contends that Sagon mailed the title documents to the coach to her North Carolina home in March 2006. (Pl. Am. Mem. in Opp. Defs. Mts. at 6).

For purposes of the motions currently before the Court, Defendants dispute several of Plaintiff's key allegations regarding her transactions with them. (Def. Sagon Rep. Mem. in Sup. Mt. to Dis. at 2-3; Def. Gulf Stream Rep. Mem. in Sup. Mt. to Dis. at 1-2). Defendant Sagon contends that on August 9, 2005, Plaintiff and her boyfriend visited Sagon's dealership in Georgia. (Def. Sagon Rep. Mem. in Sup. Mt. to Dis. at 2). Sagon contends that Plaintiff and her boyfriend stated to its representative, Dennis Braland, that they were interested in purchasing a coach immediately. (*Id*.). Sagon maintains that Plaintiff and her boyfriend stated they were residents of Florida and that neither mentioned moving to North Carolina. (*Id*.). Sagon contends that Plaintiff settled on purchasing a Gulf Stream Friendship motor coach and paid $5,000 as a down payment toward such coach. (*Id*.). Sagon acknowledges that the specific coach Plaintiff wanted was not at its premises on that occasion. (*Id*.).

Sagon further acknowledges that after Plaintiff's initial visit to its dealership, several telephone calls occurred between its representative Braland and Plaintiff. (Def. Sagon Rep.

Mem. in Sup. Mt. to Dis. at 2). Sagon contends that on August 22, 2005, Plaintiff made a second $5,000 payment for the coach with her credit card. (*Id*.). Sagon acknowledges that it mailed the contract documents to Plaintiff in North Carolina for completion. (*Id*. at 2-3).[3] Sagon contends, however, that even though the contract documents were mailed to Plaintiff, "it is unlikely that they were sent unsigned, and thus were countersigned by Sagon when [Plaintiff] mailed them back to Georgia."[4]

## II. DISCUSSION

### A. Defendant Sagon's Motion to Amend Notice of Removal and Plaintiff's Motion to Remand

Plaintiff moves for remand based on Defendant Sagon's failure to establish diversity by failing to allege the citizenship of its members in its notice of removal. (Pl. Mem. in Sup. Mt. for Rmd. at 2). Sagon moves for leave to amend its notice of removal in order to correct this defect. (Def. Sagon Mem. in Sup. Mt. to Am. at 1). Because Sagon's motion to amend is dispositive as to Plaintiff's motion for remand, the Court will address these motions simultaneously.

On August 7, 2006, Plaintiff filed suit against Defendants in the Superior Court of Iredell County, North Carolina. On September 13, 2006, Defendant Sagon, with the consent of Defendant Gulf Stream, timely removed the case to this Court based on diversity of the parties. (Def. Not. of Rmv.). Sagon alleged in its notice of removal that it is a Georgia limited liability

---

[3] Sagon originally maintained that Plaintiff completed the purchase of the coach at its premises in Georgia. (Def. Sagon Mem. in Sup. Mt. to Dis. at 2).

[4] Like Sagon, Defendant Gulf Stream also originally contended that Plaintiff completed the purchase of the coach at Sagon's premises in Georgia. (Def. Sagon Mem. in Sup. Mt. to Dis. at 1-2). However, Gulf Stream now concedes that the sales contract was mailed to Plaintiff in North Carolina, and contends that Sagon completed the contract by providing the final signatures in Georgia. (Def. Sagon Mem. in Sup. Mt. to Dis. at 1-2).

company with its principal place of business in Georgia. (*Id*. ¶ 5). However, Sagon failed to

allege the citizenship of its members. (Pl. Mem. in Sup. Mt. for Rmd. at 2; Def. Sagon Mem. in

Sup. Mt. to Am. at 2).

As Plaintiff noted, for purposes of establishing diversity, an LLC possesses the

citizenship of each of its members. (Pl. Mem. in Sup. Mt. for Rmd. at 2) (quoting *General

Technology Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 121 (4th Cir. 2004) ("[An LLC] is an

unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that

of its members."). Plaintiff therefore argues that Sagon has failed to establish diversity and that

this case should be remanded to state court. (*Id*.).

Sagon acknowledges its error and moves to amend its notice of removal to allege that:

Sagon has three, and only three members, Hal Rhoad, Heath Sagon, and Doug
Russ. Each is a citizen and resident of Georgia.

(Mt. to Am., Att. 1 ¶ 6).

Sagon asserts that its proposed amendment is permitted by 28 U.S.C. § 1653, and that Plaintiff

will not be prejudiced by the amendment. (Def. Sagon Mem. in Sup. Mt. to Am. at 2-3).

Chapter 28, United States Code, Section 1653 provides in full: "Defective allegations of

jurisdiction may be amended, upon terms, in the trial or appellate courts." Courts have

interpreted 28 U.S.C. § 1653 as permitting parties to amend defective pleading allegations *at any

time*, so long as the original removal was timely and the proposed amendment corrects a merely

technical defect. *See Gray v. Remley*, No. 1:03cv421, 2005 WL 951485, at *5 (M.D.N.C. Apr.

30, 2004) (noting that "[t]echnically defective jurisdictional allegations include . . . a removal

notice that was timely filed and which asserted diversity jurisdiction, but which inadvertently left

out the citizenship of one of the parties.") (citation omitted).

In *Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253 (4th Cir. 1984), the Fourth Circuit addressed a similar jurisdictional issue to the one at bar. In *Jaffe*, the plaintiff, a New York limited partnership, brought suit based on diversity grounds in the United States District Court for the District of South Carolina against a Tennessee corporation and a Maryland corporation. *Id*. at 255, n.1. In its pleadings, the plaintiff alleged that its general partner was a citizen of Florida, and that none of its limited partners were citizens of Tennessee. *Id*. However, the plaintiff failed to allege whether or not any of its limited partners were citizens of Maryland. *Id*. The Fourth Circuit specifically addressed the issue at oral argument by asking counsel for the plaintiff whether any of its limited partners was a citizen of Maryland. *Id*. Upon plaintiff's counsel's response in the negative, and opposing counsel's agreement, the Court, citing 28 U.S.C. § 1653, held: "[a]ccordingly, we have before us merely a defective allegation of jurisdiction which can be, and hereby is, amended by interlineation in the Complaint of an allegation that [none of plaintiff's] limited partner[s] was a Maryland citizen." *Id*.

In light of the Fourth Circuit's holding in *Jaffe* and the general application of 28 U.S.C. § 1653 by other District Courts, this Court finds that Sagon's failure to allege the citizenship of its members in its notice of removal is a mere technical defect to its pleading. Therefore, Sagon's motion to amend to correct this defect is <u>granted</u>. Accordingly, Plaintiff's motion to remand due to Sagon's failure to allege the citizenship of its members in its notice of removal is <u>denied</u>.

## B. Defendant Sagon's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Sagon moves for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that Sagon lacks minimum contacts with North

Carolina sufficient to establish personal jurisdiction in the State. (Def. Sagon Mem. in Sup. Mt. to Dis. at 3).

## 1. Standard of Review

To prevail against a pretrial 12(b)(2) motion to dismiss, a plaintiff must only present a prima facie case of personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). When determining whether a plaintiff has done so, this court must resolve all questions of fact, and draw reasonable inferences, in the light most favorable to the plaintiff. *Id*. Any of the plaintiff's uncontroverted allegations must be taken as true. *Barclays Leasing v. Nat'l Bus. Sys.*, 750 F.Supp. 184, 186 (W.D.N.C.1990). However, if the defendant has countered these allegations with facts, then the plaintiff must come forward with her own facts showing why personal jurisdiction exists. *IMO Indus., Inc. v. SEIM s.r.l.*, No. 3:05CV420, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006).

"Federal Courts exercise personal jurisdiction in the manner provided by state law." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). For this court to have jurisdiction over Defendant Sagon, "North Carolina's long arm statute must authorize jurisdiction and the defendant must be afforded its constitutional right to due process." *Acosta v. Byrum*, 638 S.E.2d 246, 252 (N.C. App. 2006) (citing *Better Bus. Forms, Inc. v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995)). North Carolina courts have interpreted N.C. Gen. Stat. § 1-75.4(1)(d) to permit the exercise of personal jurisdiction to the outer limits allowable consistent with the due process clause of the United States Constitution. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630-31 (1977). Thus, when personal jurisdiction is determined under this statutory provision, the only question is "whether

the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 259, 625 S.E.2d 894, 899 (2006) (citing *Sherlock v. Sherlock*, 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001)).

Personal jurisdiction may be either general or specific.  General jurisdiction exists when the defendant has sufficient "continuous and systematic" contacts with the forum state that it may be haled into court in that forum on any claim.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, (1984).  "Specific jurisdiction is more narrow, existing where the suit against the defendant arises out of [its] contacts with the forum state, or is related thereto."  *IMO Indus.*, at *2 (citing *Helicopteros*).

The Fourth Circuit Court of Appeals has synthesized into a three-part test the requirements of the Due Process Clause where specific jurisdiction is at issue. This court will consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *New Wellington Financial Corp.*, 416 F.3d at 294-95 (citations and internal quotations omitted).  To determine whether the exercise of personal jurisdiction would be constitutionally reasonable, this Court may look at other factors such as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.  *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994) (citations omitted); *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985); *Yates v. Motivation Indus. Equip.*

*Ltd.*, 38 Fed. Appx. 174, 181 (4ᵗʰ Cir. 2002) (Wilkinson, C.J., dissenting). All three prongs must be satisfied for this Court to exercise specific jurisdiction over a defendant consistent with the Due Process Clause. *IMO Indus.*, at *2 (citing *Yates*, 38 Fed. Appx. at 179).

## 2. Analysis

Plaintiff argues that the Court has both general and specific personal jurisdiction over Sagon. (Pl. Am. Mem. in Opp. Defs. Mts. at 14-15).

Plaintiff argues that the Court has general personal jurisdiction over Sagon based on its alleged "regular and systematic" contacts with North Carolina through advertising on the Internet and participation in a national RV dealer referral service. (*Id*. at 6, 14-15). Neither of these activities are sufficient to establish general personal jurisdiction. As the Fourth Circuit has held, "[a] person's action of placing information on the Internet is not sufficient by itself to 'subject that person to personal jurisdiction in each State in which the information is accessed.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4ᵗʰ Cir. 2003) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4ᵗʰ Cir. 2002)). Thus, Sagon's Internet advertising is not sufficient to establish its "regular and systematic" contacts with North Carolina. Additionally, Sagon's participation in the national dealer referral service is akin to advertising in a national magazine, a relatively passive act that does not specifically direct contact to any particular forum. This Court and other courts have found, "merely placing an advertisement in a nationwide magazine does not lead to personal jurisdiction." *IMO Indus.*, at *3 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10ᵗʰ Cir. 1994)). Thus, Sagon's participation in a national dealer referral service is insufficient to establish personal jurisdiction in this State. Accordingly,

Plaintiff cannot establish that this Court possesses general personal jurisdiction over Sagon.

Plaintiff argues that the Court has specific personal jurisdiction over Sagon through: Sagon's representative's telephone calls to Plaintiff in North Carolina which were intended to solicit Plaintiff into purchasing a motor coach; the parties' negotiations over the telephone for the purchase of the coach; Sagon's mailing the sales contract for the coach and other paperwork to Plaintiff in North Carolina; and Plaintiff's signing the sales contract in North Carolina. (Pl. Am. Mem. in Opp. Defs. Mts. at 4-6, 14-15). In *ALS Scan*, the Fourth Circuit drew a distinction between passive and active electronic contacts with a forum state. 293 F.3d at 713-14. The Court noted that while a defendant's "passive" website is insufficient to establish specific personal jurisdiction, where a "defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id*. In conclusion, the Court held:

> [A] state may, consistent with due process, exercise judicial power over a person
> outside of the State when that person (1) directs electronic activity into the State,
> (2) with the manifested intent of engaging in business or other interactions within
> the State, and (3) that activity creates, in a person within the State, a potential
> cause of action cognizable in the State's courts.

*Id*. at 714 (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997).

Plaintiff's allegations that: (1) Sagon initiated telephone calls to Plaintiff in North Carolina, which (2) were for the purpose of soliciting her into purchasing a motor coach, and which (3) resulted in Plaintiff's negotiation for and purchase of a motor coach, which in turn gave rise to this cause of action, seem to comport with the Fourth Circuit's criteria for finding specific personal jurisdiction under *ALS Scan*. *Id*.; *see also Stover v. O'Connell Associates, Inc.*,

84 F.3d 132, 137 (4th Cir. 1996) ("[T]he use of a telephone to facilitate transactions between remote locations serves as an *alternative* to presence.") (emphasis in original). Plaintiff's added allegations that Sagon mailed the sales contract to her in North Carolina, and that she signed the contract in North Carolina, further support a finding that Sagon is subject to specific personal jurisdiction in this State. Therefore, the Court finds that it possesses specific personal jurisdiction over Sagon. Accordingly, Sagon's motion to dismiss for lack of personal jurisdiction is <u>denied</u>.

## C. Defendant Gulf Stream's Motion to Dismiss for Improper Venue and Motion to Transfer Venue[5]

### 1. Defendant Gulf Stream's Motion to Dismiss for Improper Venue

Defendant Gulf Stream moves for dismissal for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) on the grounds that this District is not a proper venue for this action under the requirements of 28 U.S.C. § 1391. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. at 3-4).

### a. Standard of Review

"In resolving a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), the court must draw all inferences in favor of the plainitff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Godfredson v. JBC Legal Group, P.C.*, 387 F.Supp.2d 543, 547 (E.D.N.C. 2005) (quoting *Three M Enterprises, Inc., v. Texas D.A.R. Enterprises, Inc.*, 368 F.Supp.2d 450, 454 (D.Md. 2005)). Plaintiff need only make

---

[5] Sagon joins Gulf Stream's motion to dismiss for improper venue and motion to transfer venue. (Def. Sagon Mem. in Sup. Mt. to Dis. at 1, 11-12).

a *prima facie* showing of venue. *Mirano v. Hawes*, 377 F.3d 402, 405 (4ᵗʰ Cir. 2004). The propriety of venue is normally determined by the requirements of the general venue statute, 28 U.S.C. § 1391. *Godfredson*, 387 F.Supp.2d at 547 (citing *Three M Enterprises*, 368 F.Supp.2d at 455). "With respect to cases removed to federal court from state court, however, venue is determined solely by the removal statute, 28 U.S.C. § 1441." *Id*. (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665, 73 S.Ct. 900 (1953)).

### b. Analysis

Gulf Stream, citing 28 U.S.C. § 1391, argues for dismissal for improper venue on the grounds that the "events giving rise to the dispute occurred outside of North Carolina." (Def. Gulf Stream Mem. in Sup. Mt. for Dis. at 3-4).[6]

A long line of courts, including this Court, have held that "28 U.S.C. § 1391 does not apply when . . . defendants remove a case to federal court from state court." *Godfredson*, 387 F.Supp.2d at 555 (quoting *Polizzi,* 345 U.S. at 665, 73 S.Ct. 900) ("[O]n the question of venue, § 1391 has no application to this case because it is a removed action."); *see Hollis v. Florida State University*, 259 F.3d 1295, 1299 (11ᵗʰ Cir. 2001); *Three M Enterprises*, 368 F.Supp.2d at 455; *Walker v. White*, No. 1:06cv350, 2007 WL 1612451 at *9-10 (W.D.N.C. May 31, 2007). As the Court in *Godfredson* explained:

> Venue for a removed action is fixed . . . by the removal statute, 28 U.S.C. § 1441(a), which limits venue to 'the district court of the United States for the district and division embracing the place where such action is pending.' *See* [*Polizzi,* 345 U.S. at 665, 73 S.Ct. 900]; 28 U.S.C. § 1441(a). Because § 1441(a) only allows one possible venue for removal, 'once a case is properly removed to

---

[6] Gulf Stream acknowledges that Plaintiff signed the sales contract for the coach in North Carolina, but contends that the contract was formed in Gerogia after Plaintiff mailed the contract back to Sagon. (Def. Gulf Stream Rep. Mem. in Sup. Mt. for Dis. at 6-9).

federal court, a defendant cannot move to dismiss on § 1391 grounds.' [*Hollis*, 259 F.3d at 1299]. This is true 'even if venue would be improper under state law when the action was originally filed.' *See Three M Enterprises*, 368 F.Supp.2d at 455 (citing *Hollis*, 259 F.3d at 1300).

387 F.Supp.2d at 555-56.

Gulf Stream removed the action to this Court under 28 U.S.C. § 1441(a). As a result, it is precluded from moving for dismissal on § 1391 grounds. Therefore, Gulf Stream's motion to dismiss for improper venue is <u>denied</u>.

## 2. Defendant Gulf Stream's Motion to Transfer Venue

As an alternative to its motion to dismiss for improper venue, Gulf Stream moves for transfer of venue pursuant to § 1404(a). (Def. Gulf Stream Mem. in Sup. Mt. for Dis. at 4-5).

### a. Standard of Review

The Court in *Godfredson* noted that, "a defendant in a removed action, if it believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a)." *Id.* at 556; *see Hollis*, 259 F.3d at 1300; *Walker*, 2007 WL 1612451 at *10. Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

Generally, the movant carries a "heavy burden" in establishing that a case should be transferred pursuant to 28 U.S.C. § 1404(a). *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F.Supp. 93, 95 (W.D.N.C.). This Court has also enumerated eleven factors that a court should consider when deciding whether to transfer a matter:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

*Id*. (citing *Commercial Equipment Co. v. Barclay Furniture Co.*, 738 F.Supp. 974, 977 (W.D.N.C. 1990); *McDevitt & Street Co. v. Fidelity and Deposit Co.*, 737 F.Supp. 351, 354 (W.D.N.C.)).

The Court's analysis of these factors is both qualitative and quantitative. *Id.* As the Court discusses in detail below, where a party's motion to transfer venue is based on a forum selection clause, "[s]uch clause shifts the burden from the party seeking transfer to the party opposing it." *Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 704 (M.D.N.C. 2007) (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *Cable-La, Inc. v. Williams Communications, Inc.*, 104 F.Supp.2d 569, 574-75 (M.D.N.C. 1999)).

**b. Analysis**

Both Gulf Stream and Plaintiff make arguments for and against transfer of venue based on the eleven factors outlined above. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. 11-16; Def. Gulf Stream Rep. Mem. in Sup. Mt. for Dis. at 9-11; Pl. Am. Mem. in Opp. Defs. Mts. at 9-11). Antecedent to their respective arguments, both parties focus considerable attention on whether a forum selection clause in the contract between Gulf Stream and Plaintiff is valid. (Def. Gulf

Stream Mem. in Sup. Mt. for Dis. 5-11; Def. Gulf Stream Rep. Mem. in Sup. Mt. for Dis. at 5-9; Pl. Am. Mem. in Opp. Defs. Mts. at 7-9). Given "the presumption of enforceability that forum selection . . . provisions enjoy," *Allen*, 94 F.3d at 928, the Court will address this issue before examining any other factors weighing for or against transfer.

Gulf Stream contends that the forum selection clause is valid, and that the Court should enforce the clause by transferring the case to the selected forum, the United States District Court for the Northern District of Indiana. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. 5-11; Def. Gulf Stream Rep. Mem. in Sup. Mt. for Dis. at 5-9).[7] In support of its argument, Gulf Stream contends that the contract was formed in Georgia, which honors forum selection clauses. (*Id*.).

---

[7] Gulf Stream contends that the forum selection clause at issue is printed under the heading "Limited Warranty" inside the owner's manual which Sagon purportedly provided to Plaintiff when she purchased the coach. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. at 2, Att. B). Under a section of the limited warranty entitled "JURISDICTION AND APPLICABLE LAW" in bold lettering, the clause states:

> Exclusive jurisdiction for deciding any claims, demands or causes of action for defects or representations of any nature or damages due from such defects or representations shall be in the courts of the State of Manufacture. The laws applicable to any litigation, dispute, mediation, arbitration or any claim whatsoever arising form the sale, purchase, or use of the recreational vehicle shall be those of the State of Manufacture.

(*Id*. at 2-3, Att. B ¶ 6).

Gulf Stream contends that Plaintiff agreed to this clause by signing a second document, entitled "Warranty Registration." (*Id*. at 2-3). The Warranty Registration includes a certification section that states:

> I certify that the dealer (or an authorized representative) explained . . . all warranties. I acknowledge receipt of the Gulf Stream Warranty and all appropriate owner's manuals . . . and agree to comply with their terms.

(*Id*. at 3, Att. C).

The signatures of both Plaintiff and a person purported to be Sagon's representative are on the Warranty Registration and dated August 31, 2005. (*Id*., Att. C).

Gulf Stream asserts that the contract was formed after Plaintiff purportedly mailed her signed contract back to Sagon in Georgia for completion. (Def. Gulf Stream Rep. Mem. in Sup. Mt. for Dis. at 2-3). Gulf Stream also contends that the forum selection clause in this case has been enforced by courts in other jurisdictions. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. 7-8) (citing *Harris v. Ford Motor Co.*, No. 00CV701, (N.D. Ohio June 9, 2000)).

Plaintiff contends that the forum selection clause is not valid because she signed the contract in North Carolina, where forum selection clauses are void via statute. (Pl. Am. Mem. in Opp. Defs. Mts. at 7-9) (quoting N.C. GEN. STAT. § 22B-3) ("[A]ny provision of a contract entered into in North Carolina that requires the prosecution of any action . . . of any dispute that arises from the contract to be instituted in another state is against public policy and is void and unenforceable."). In further support of her argument, Plaintiff points to a *second* forum selection and choice of law clause that is in her contract with Sagon, which states:

> CONTROLLING LAW AND PLACE OF SUIT. The law of the State in which Buyer signs this contract, is the law which is to be used in interpreting the terms of the contract . . . .

(*Id*. at 8).[8]

Plaintiff asserts that because this contract provision was signed in North Carolina, Gulf Stream's forum selection clause should not be honored. (*Id*.).

The United States Supreme Court, the Fourth Circuit, and all of the District Courts in North Carolina, including this Court, have addressed issues similar to those at bar regarding the validity of a forum selection clause. In *Stewart Organization, Inc. v. Rioch Corp.*, 487 U.S. 22,

---

[8] Gulf Stream notes that Plaintiff failed to distinguish the forum selection clause in her contract with Sagon from the forum selection clause in her contract with Gulf Stream. (Def. Gulf Stream Rep. Mem. in Sup. Mt. for Dis. at 5-6). The Court duly notes the distinction between the two contracts.

108 S.Ct. 2239 (1988), the United States Supreme Court specifically addressed the question of whether a state law prohibiting forum selection clauses prevents a diverse party's enforcement of such clause pursuant to a 28 U.S.C. § 1404(a) motion to transfer venue. *Id*. at 24, 108 S.Ct. at 2240-41.

In *Stewart*, an Alabama corporation entered into a dealership agreement with a New Jersey manufacturer to market the New Jersey manufacturer's products. *Id*., 108 S.Ct. at 2241. The agreement included a forum selection clause that required any potential litigation between the parties to be resolved in the state or federal courts in Manhattan, New York, New York. *Id*. The Alabama corporation filed suit against the New Jersey manufacturer in the United States District Court for the Northern District of Alabama, asserting claims of breach of contract and breach of warranty, among others. *Id*. The New Jersey manufacturer, relying on the forum selection clause, moved, pursuant to 28 U.S.C. § 1404(a), to transfer venue to the Southern District of New York. *Id*. The District Court in Alabama denied the motion on the grounds that Alabama law controlled the issue, and as such, Alabama law looked unfavorably on forum selection clauses. *Id*. The Eleventh Circuit reversed on the grounds that "questions of venue in diversity actions are governed by federal law, and that the parties' forum-selection clause was enforceable as a matter of federal law." *Id*. at 25, 108 S.Ct. at 2241 (citation omitted).

The Supreme Court engaged in an extensive analysis of the conflict between the Alabama law and 28 U.S.C. § 1404(a). *Stewart*, 487 U.S. at 30-32, 108 S.Ct. at 2243-45. In resolving the conflict, the Court stated:

> The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as [the New Jersey manufacturer] would have it) nor no consideration (as Alabama law might have it)

but rather the consideration for which Congress provided in § 1404(a).  *Cf.*
*Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546 (1955) (§ 1404(a)
accords broad discretion to a district court, and plaintiff's choice of forum is only
one relevant factor for its consideration).

*Id*. at 31, 108 S.Ct. at 2245.

In conclusion, the Court in *Stewart* specifically held:

28 U.S.C. § 1404(a) governs the District Court's decision whether to give effect to
the parties' forum-selection clause and transfer this case to a court in Manhattan.
We therefore affirm the Eleventh Circuit order reversing the District Court's
application of Alabama law.  The case is remanded so that the District Court may
determine in the first instance the appropriate effect under federal law of the
parties' forum-selection clause on respondent's § 1404(a) motion.

*Id*. at 32, 108 S.Ct. at 2245.

Following *Stewart*, the Supreme Court upheld the validity of a form forum selection

clause in the oft-cited case *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522

(1991).  *Id*. at 592-94, 111 S.Ct. at 1527-28.  The forum selection clause at issue in the case was

printed on a ticket that the plaintiffs purchased for a cruise on the defendant cruise line.  *Id*. at

587, 111 S.Ct. at 1524.  In upholding the clause, the Court emphasized the presumptive validity

of forum selection clauses entered into in arms-length agreements.  *Id*. at 592-94, 111 S.Ct. at

1527-28.  The Court also emphasized that "forum-selection clauses contained in form . . .

contracts are subject to judicial scrutiny for fundamental fairness."  *Id*. at 594, 111 S.Ct. at 1528.

In *Allen v. Lloyd's of London*, 94 F.3d 923 (4th Cir. 1996), the Fourth Circuit summarized

the Supreme Court's holding in *Carnival Cruise Lines*, and the seminal case which it followed,

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972).  *Id*. at 928.  The Court

stated that "the presumption of enforceability that forum selection and choice of law provisions

enjoy is not absolute and, therefore, may be overcome by a clear showing that they are

'unreasonable under the circumstances.'" *Id*. at 928 (quoting *The Bremen*, 407 U.S. at 10, 92 S.Ct. at 1913). The Fourth Circuit specified that a forum selection clause may be found unreasonable if:

> (1) [The clause's] formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [the clause's] enforcement would contravene a strong showing of public policy of the forum state.

*Id*. (citing *Carnival Cruise Lines*, 499 U.S. at 595, 111 S.Ct. at 1528; *The Bremen*, 407 U.S. at 12-13, 15, 18, 92 S.Ct. at 1914-15, 1916, 1917).

Each of the District Courts in North Carolina have applied the combined holdings of *Stewart*, *Carnival Cruise Lines*, and *Allen* to arguments similar to those raised by the parties in this case, namely, whether North Carolina's statute prohibiting forum selection clauses precludes enforcement of such clause pursuant to a 28 U.S.C. § 1404(a) motion to transfer venue. *See Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 704-05 (M.D.N.C. 2007); *James C. Greene Co. v. Great American E & S Ins. Co.*, 321 F.Supp.2d 717, 721-22 (E.D.N.C. 2004); *Dove Air, Inc. v. Bennett*, 226 F.Supp.2d 771, 773-76 (W.D.N.C. 2002). All three Courts have consistently found that, under *Stewart*, the North Carolina statute is not dispositive as to the enforceability of a forum selection clause. *Blue Mako*, 472 F.Supp.2d at 704-05; *James C. Greene*, 321 F.Supp.2d at 721-22; *Dove Air*, 226 F.Supp.2d at 775-76. All three Courts have also found that, under the fourth factor in *Allen*, the North Carolina statute would present a "strong public policy" against enforcement of a forum selection clause. *Blue Mako*, 472 F.Supp.2d at 704-05; *James C. Greene*, 321 F.Supp.2d at 721-22; *Dove Air*, 226 F.Supp.2d at 775-76. The Courts noted that the applicability of the North Carolina statute is contingent upon the given contract's formation in

North Carolina, and even then, the statute would be only one factor among several under *Allen* and traditional § 1404(a) analysis. *Blue Mako*, 472 F.Supp.2d at 704-05; *James C. Greene*, 321 F.Supp.2d at 721-22; *Dove Air*, 226 F.Supp.2d at 775-76.

In light of these holdings and the eleven § 1404(a) factors outlined above, the Court turns to the issue at bar. Plaintiff pins her entire argument against enforcement of the forum selection clause on the North Carolina preemption statute. (Pl. Am. Mem. in Opp. Defs. Mts. at 7-9; Pl. Sur. Mem. in Opp. Defs. Mts. at 2-3). However, even assuming all facts in Plaintiff's favor as to the alleged location of contract formation, to paraphrase the Court in *James C. Greene*, Plaintiff's singular reliance on North Carolina law is "misplaced in light of the Supreme Court's admonition in *Stewart*." *James C. Greene*, 321 F.Supp.2d at 721. "[A]fter *Stewart*, the fact that the forum selection clause violated the public policy of North Carolina is not by and of itself sufficient to render the clause unreasonable." *Id.* (citing *Stewart* 487 U.S at 32, 108 S.Ct. at 2245). Thus, North Carolina's prohibition of forum selection clauses does not prevent the enforcement of Gulf Stream's forum selection clause in this case.

Plaintiff fails to directly address any of the other factors under *Allen* which would weigh against the enforceability of the forum selection clause. Plaintiff does, however, address the factors under § 1404(a) in arguing that North Carolina is the more convenient forum for litigating the case. (Pl. Am. Mem. in Opp. Defs. Mts. at 9-11). Gulf Stream likewise argues under the § 1404(a) factors that Indiana is the more convenient forum. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. 12-16). The Court will summarily address the parties' arguments on these factors in the interest of fully resolving the issue. *See James C. Greene*, 321 F.Supp.2d at 722 (addressing the traditional § 1404(a) factors under the "grave inconvenience" factor of *Allen*) (citing *Cable-La*,

*Inc. v. Williams Communications, Inc.*, 104 F.Supp.2d 569, 577 (M.D.N.C. 1999)).

Plaintiff argues that North Carolina is the more convenient forum on the grounds that: (1) she chose North Carolina as the proper forum by filing suit here; (2) she resides in North Carolina and the Defendants knew she resided in North Carolina; (3) the allegedly defective coach is present in North Carolina; (4) Plaintiff is more likely to receive a fair trial from her peers in North Carolina; and (5) North Carolina law governs the suit, and hence, a North Carolina court would be more familiar with the applicable law. (Pl. Am. Mem. in Opp. Defs. Mts. at 9-11).

Gulf Stream argues that Indiana is the more convenient forum on the grounds that: (1) Plaintiff initially chose Indiana as the proper forum via her agreement to the forum selection clause; (2) Gulf Stream's manufacturing operations, documents and witnesses are in Indiana; and (3) Indiana law governs the suit via the choice of law provision that was also part of the forum selection clause, and therefore, an Indiana court is more familiar with the applicable law. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. 12-16).[9]

---

[9] Both parties contend that there is no conflict of laws issue in this case because they argue, respectively, that the case is controlled by either North Carolina law, or Indiana law. (Pl. Am. Mem. in Opp. Defs. Mts. at 11; Def. Gulf Stream Mem. in Sup. Mt. for Dis. 15-16). On this issue, the Court notes that the forum selection clause in Plaintiff's contract with Sagon states:

> The law of the State in which Buyer signs this contract is the law which is to be used in interpreting the contract. Dealer and Buyer agree that if any dispute between us is submitted to a court for resolution, such legal proceeding shall take place in the county in which Dealer's principle offices are located.

(Pl. Sur. Mem. Opp. Defs. Mts., Att. A).

Sagon has consented to removal to the Northern District of Indiana, therefore, the Court finds that no conflict exists as to choice of forum between the two forum selection clauses. (Def. Sagon Mem. in Sup. Mt. for Dis. at 12). However, the two clauses also contain choice of law provisions that appear to be in conflict. (Def. Gulf Stream Mem. in Sup. Mt. for Dis. at 2, Att. B) (designating Indiana law as controlling law). The Court finds that to the extent any such conflict exists, it does not pose an impediment to Gulf Stream's motion to transfer. However, the Court notes the potential of such conflict

24

After weighing the parties' arguments, the Court finds that Plaintiff has not demonstrated that transfer of venue to the Northern District of Indiana would present a "grave inconvenience" under *Allen*. *Id*. at 928; *see Carnival Cruise Lines*, 499 U.S. at 594-95, 111 S.Ct. at 1527-28 (holding that Florida is not a "'remote and alien'" forum for plaintiffs from the State of Washington, and therefore, plaintiffs failed to satisfy the "'heavy burden of proof' required to set aside the clause on grounds of inconvenience.") (quoting *The Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917). The Court also notes that several other District Courts have upheld the very same forum selection clause at issue in this case, and that Plaintiff has not demonstrated that litigating in the Northern District of Indiana would be any more inconvenient for her than it was for the parties in previous cases. *See Harris v. Ford Motor Co.*, No. 00CV701, at 7 (N.D. Ohio June 9, 2000) (citing to cases involving Gulf Stream that were transferred to the Northern District of Indiana from the District of Alaska, the Eastern District of Tennessee, and the Southern District of Ohio).

Therefore, this Court will uphold the forum selection clause in Plaintiff's contract with Gulf Stream, and grant Gulf Stream's motion to transfer venue to the Northern District of Indiana.[10]

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Sagon's Motion to Amend Notice of Removal is hereby **GRANTED**.

---

should it become an issue in the case going forward.

[10] Plaintiff filed a surreply brief in order to challenge new facts that Defendants presented in their reply briefs in support of their motions to dismiss and transfer venue. (Pl. Sur. Mem. Opp. Defs. Mts.). Gulf Stream moves to strike Plaintiff's surreply brief. (Def. Gulf Stream Mt. to Str.). Having granted Gulf Stream's motion to transfer venue, its motion to strike is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Remand is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Sagon's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Gulf Stream's Motion to Dismiss for Improper Venue is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Gulf Stream's Motion to Strike Plaintiff's Surreply Memorandum is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Gulf Stream's Motion to Transfer Venue is hereby **GRANTED**, **THEREFORE**, this action is hereby **TRANSFERRED** to the Northern District of Indiana.

Signed: February 26, 2008

Richard L. Voorhees
United States District Judge